# IN THE COURT OF APPEALS OF IOWA

No. 18-2056
Filed March 20, 2019

**IN THE INTEREST OF D.B.,**
**Minor Child,**

**L.B., Mother,**
     Appellant.
_____

        Appeal from the Iowa District Court for Audubon County, Amy L. Zacharias,

District Associate Judge.


        A mother appeals the termination of her parental rights to one child.

**AFFIRMED.**


        Jonathan J. Mailander of Mailander Law, Atlantic, for appellant mother.

        Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney

General, for appellee State.

        William T. Early, Harlan, guardian ad litem for minor child.


        Considered by Doyle, P.J., Mullins, J., and Blane, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**BLANE, Senior Judge.**

A mother, Laura, appeals the termination of her parental rights to a child, D.B., who is now one year old, pursuant to Iowa Code section 232.116(1)(b), (e), and (h) (2018). She contends the State did not prove the statutory grounds for termination; termination would be detrimental to D.B. based on their bond; and the department of human services (DHS) failed to make reasonable efforts toward reunification. Finding no merit in any of these contentions, we affirm.

## I.    FACTS AND PRIOR PROCEEDINGS

D.B. was born in October 2017 and was immediately removed from Laura and placed with a foster family.[1] He tested positive at birth for amphetamines, methamphetamine, cannabinoids, and carboxy-THC. The DHS founded a child-abuse report against Laura for the presence of illegal drugs. Laura has a long history of substance abuse, uncontrolled mental-health impairments, and domestic-violence incidents. When D.B. was born, Laura reportedly was not taking her mental-health medication and demonstrated delusional thoughts. The juvenile court subsequently adjudicated D.B. a child in need of assistance (CINA) pursuant to Iowa Code section 232.2(6)(b) (physical abuse or neglect), (n) (impaired mental capacity or condition, imprisonment, or drug and alcohol abuse), and (o) (presence of an illegal drug due to acts of parent). It ordered Laura to attend counseling and obtain treatment for substance abuse and mental health, abstain from drugs and alcohol, and submit to drug testing. The court also ordered DHS to set up visitations.

---

[1] The court also ultimately terminated the parental rights of D.B.'s father, Daniel, but he did not appeal the termination.

In the following months, service providers and social workers reported next to no improvement in Laura's condition. In November and December 2017, Laura participated in six out of twenty-two offered supervised interactions. She did not engage in substance-abuse treatment or mental-health therapy and continued to exhibit delusional thinking. Toward the end of December 2017, Laura was in jail in Douglas County, Nebraska, under theft charges. In the CINA dispositional order, the court noted Laura requested to have interactions with D.B. at the jail. The court denied that request.

Seven months later, in July 2018, DHS reported once again that Laura made no progress. She had not maintained contact with the family safety, risk, and permanency (FSRP) worker or DHS; completed substance-abuse or mental-health evaluations; progressed in any services; or submitted to any drug testing. She attended three visitations over a six-month period. In its permanency order, the court changed the case goal to termination and adoption, and the State filed its petition for termination in September 2018.

The court heard the evidence in the termination petition in November 2018. At that time, Laura was in Douglas County Jail on felony theft charges.[2] She did not complete ordered treatment or testing but was admitted to a drug treatment program through the jail and was participating in intensive outpatient treatment and cognitive behavior class. She was awaiting a hearing to determine whether she would remain in jail or be ordered into a mental-health respite program. She last

---

[2] Earlier in the year, Laura had been under arrest for theft but was released to participate in a mental health diversion program. Nonetheless, she was arrested again on new felony theft charges and had been in jail since September.

saw D.B. at an interaction in July for a total of ten interactions over the year-long CINA proceeding.  When asked if it was possible to have interactions with D.B. in the jail, her jail caseworker said no but some jail programs would allow it.  At the termination hearing, Laura testified she was in a work release program for mental-health and substance-abuse treatment, which usually lasted two years.  She testified she was taking her medications, but the court noted her testimony continued to be confused, rambling, and delusional.

The court found termination appropriate under Iowa Code section 232.116(1)(b),[3] (e),[4] and (h).[5]  Laura appeals.

## II.    SCOPE AND STANDARD OF REVIEW

We review termination-of-parental-rights proceedings de novo.  *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014); *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).  However, "[w]e give weight to the findings of the juvenile court, particularly with respect to the credibility of witnesses."  *In re B.N.*, No. 00-0220, 2001 WL 57987, at *1 (Iowa Ct. App. Jan 24, 2001); *accord D.W.*, 791 N.W.2d at 706.  The statutory framework authorizing the termination of a parent-child relationship is well

---

[3] Including that the child has been "abandoned or deserted."

[4] Including that the parent has failed to maintain "significant and meaningful contact with the child" and has "made no reasonable efforts to resume care of the child despite begin given the opportunity to do so."

[5] "[A]ll the following have occurred:"

  (1) The child is three years of age or younger.

  (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

  (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

  (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

established. *See In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2018) (setting forth the statutory framework). The burden is on the State to prove by clear and convincing evidence (1) the statutory ground or grounds authorizing the termination of parental rights and (2) "termination of parental rights is in the best interests of the children." *See In re E.H.*, No. 17-0615, 2017 WL 2684420, at *1 (Iowa Ct. App. June 21, 2017); *see also* Iowa Code § 232.116(2).

## III.   ANALYSIS

We first address Laura's claim there is insufficient evidence supporting the termination of her parental rights. The State was required to prove termination was supported on just one ground,[6] we focus on paragraph (h).

Laura concedes the State proved three of the four prongs of this ground; but she insists the State failed to prove by clear and convincing evidence that "at the present time" D.B. "cannot be returned to the custody of the child's parents as provided in section 232.102." Iowa Code § 232.116(1)(h). "At the present time" means at the time of the termination hearing. *See A.M.*, 843 N.W.2d at 111. We have interpreted these statutory provisions to mean the State was required to prove the child could not be returned to the parent without creating "an appreciable risk of adjudicatory harm" to the child. *See In re E.H.*, 2017 WL 2684420, at *1.

Laura says her current drug program will allow her to be placed in a mental-health respite program and "[t]here was no testimony offered that would dispute the possibility of an immediate placement in a respite program that would allow the

---

[6] "When the juvenile court terminates parental rights on more than one statutory ground, we need only find grounds to terminate under one of the sections cited by the juvenile court to affirm." *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999).

child to be placed with Laura." We understand this statement to assert Laura could have D.B. placed with her in a drug-treatment program, but there is no support for this assertion in the record. The DHS worker did not receive any information from the jail caseworker indicating children could be placed with their parents in that particular program, and there is no testimony to that effect. The program Laura was in at the time the social worker inquired did not permit children, and going to the respite program was not guaranteed. Outside of her incarcerations, Laura was homeless and unemployed. She had not adequately resolved her substance-abuse or mental-health issues. She obtained new theft charges just weeks before the termination hearing. She had interacted with D.B. on only ten occasions since his birth, and the record does not persuade us she could advance from those supervised visits to parenting D.B. safely alone. The record is clear and convincing that D.B. could not be placed with Laura at the present time. The State proved the statutory ground for termination.

We next address Laura's claim termination was not in D.B.'s best interests. Under supporting legal authority, Laura cites Iowa Code section 232.116(3), so we assume she concedes the best-interests question under section 232.116(2) and look to statutory factors the court may consider to prevent termination despite proof of the statutory grounds. Laura asserts she has a bond with D.B. and she is getting the substance-abuse and mental-health help she needs. We do not believe the bond is so close that severing it will be detrimental to D.B. *See* Iowa Code § 232.116(3)(c) ("The court need not terminate the relationship between the parent and child if the court finds . . . [t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of

the parent-child relationship.") D.B. has lived his entire life with foster parents and knows Laura from only ten interactions, all of which occurred five months or more before the termination hearing. And Laura has made almost no effort to get her substance-abuse and mental-health issues under control so she can safely parent. D.B.'s best interests compel termination of Laura's parental rights.

Laura next complains, "DHS failed to provide visitation or any type of contact for Laura once she was incarcerated in the Douglas County Jail." The DHS "has an obligation to make reasonable efforts toward reunification." *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005). "The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of parent." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000).

Recent cases support that the reasonable-efforts obligation persists despite the obstacle of a parent's incarceration. *See In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017); *In re R.B.*, No. 18-0146, 2018 WL 3057881, at *2 (Iowa Ct. App. June 20, 2018) (Tabor, J., concurring specially); *In re S.J.*, 620 N.W.2d 522, 524–25 (Iowa Ct. App. 2000). We are troubled by the DHS's failure to ultimately ascertain whether interactions were possible in person, or at least over the phone or by video, during Laura's multiple incarcerations.

However, we recognize that a parent has "an equal obligation to demand other, different, or additional services prior to a permanency or termination hearing." *A.A.G.*, 708 N.W.2d at 91. Laura does not explain how she preserved this issue for appeal other than she denied the allegations in the petition and filed a timely appeal. We note that Laura asked for visitation in the jail when she was arrested in December 2017. By then, Laura had already missed sixteen of the

twenty-two scheduled visitations. In the CINA dispositional order, the court determined visitation in jail would not be in D.B.'s best interests:

> [D.B.] is only a little over two months old. He has no bond with Laura as she has missed so many available interactions. [D.B.] has had serious health issues which required him to be hospitalized. Visitation available at Douglas County Corrections where Laura is located is only by video and . . . physical contact would [not] be allowed. For these reasons, along with the record made at the hearing, the Court finds it is not in [D.B.'s] best interests to visit Laura while she is incarcerated. Should the Court learn this is a long-term placement, this issue shall be revisited.

The court also determined at that time DHS had made reasonable efforts toward reunification. Laura did not appeal this order nor did she renew her request except at the termination hearing nine months later. By then she had attended just ten interactions with D.B., the last one five months earlier in July. She had been in and out of jail throughout this case—consequences of her own actions. Laura had been offered many services to address her parenting and personal issues and had taken advantage of none of them. Of the visitation she was offered, she kept only ten over a year. The jail program did not allow in-person visitation, and phone or video would have been of limited value to the infant D.B. Nonetheless, our focus is on "the services provided by the State and the response by [the parent], not on services [the parent] now claims the DHS failed to provide." *C.B.*, 611 N.W.2d at 494. DHS made reasonable efforts under the circumstances.

Finding no deficiencies in the termination order, we affirm.

**AFFIRMED.**